# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| RICHARD M.,[1] | : Case No. 3:23-cv-00037 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Caroline H. Gentry |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

## DECISION AND ORDER

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in August 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

I.   BACKGROUND

Plaintiff asserts that he has been under a disability since June 30, 2019. At that time, he was thirty-nine years old. Accordingly, Plaintiff was a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 33-53), Plaintiff's Statement of Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

II.   STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III.  FACTS

#### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:   Plaintiff has not engaged in substantial gainful activity since June 30, 2019, the alleged onset date.
>
> Step 2:   He has the severe impairments of chronic pancreatitis, ulcers, biliary obstruction, gastric outlet obstruction, type-II diabetes mellitus, right drop foot, and hypertension.

> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: "Standing and/or walking for about 4 hours in an 8-hour workday. No more than frequent balancing. No more than occasional stooping, kneeling, crouching, crawling, overhead reaching bilaterally, or climbing of ramps and stairs. No climbing of ladders, ropes, and scaffolds. [Plaintiff] should avoid unprotected heights and dangerous machinery. [Plaintiff] would require the use of a single-point cane."
>
> Plaintiff is able to perform his past relevant work as a Claims Clerk I and Insurance Customer Service Representative.

(Decision, Doc. No. 8-2 at PageID 38-48.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 48.)

### B. Plaintiff's Digestive Impairments

#### 1. Subjective complaints

Plaintiff alleged disability in part due to chronic and severe abdominal pain, chronic pancreatitis, ulcers, and a ruptured spleen. (AR, Doc. No. 8-6 at PageID 271, 287.) Plaintiff testified that he had undergone multiple abdominal surgeries and also went to the emergency room several times for pain. (AR, Doc. No. 8-2 at PageID 73-75.) He complained of difficulty with sitting and standing for long periods of time. (*Id.* at PageID 73-74.) Plaintiff estimated that he could sit for approximately thirty minutes to an hour before needing to change positions, and stand for approximately fifteen to thirty minutes before needing to sit. (*Id.* at PageID 76.) He estimated that he could comfortably lift a

5

gallon of milk, and said that he could "go more than that" but had not lifted more than fifteen pounds in the last year and a half. (*Id.*) Plaintiff had daily flare-ups of pancreatitis and was most comfortable "with a heating pad on [his] stomach laying semi-flat in a recliner." (*Id.* at PageID 74.)

### 2. Medical records

On September 15, 2019, Plaintiff went to a hospital emergency room complaining of upper abdominal and epigastric pain. (AR, Doc. No. 8-7 at PageID 405.) After a CT scan of the abdomen and pelvis showed findings suggestive of chronic pancreatitis, Plaintiff was discharged without being admitted. (*Id.* at PageID 408-09.) He returned two days later and was admitted to the hospital for gastrointestinal bleeding. (AR, Doc. No. 8-9 at PageID 1044.) Plaintiff underwent surgical repair of a perforated duodenal ulcer with over-sewing of the gastroduodenal artery. (*Id.* at PageID 1055; AR, Doc. No. 8-8 at PageID 682.) He remained in the hospital for treatment after post-surgical imaging showed a leak. (AR, Doc. No. 8-8 at PageID 682.) Plaintiff was discharged to an acute long-term care hospital facility on October 4, 2019. (*Id.* at PageID 682; AR, Doc. No. 8-7 at PageID 318.) He was eventually discharged from that facility on November 6, 2019. (AR, Doc. No. 8-7 at PageID 318, 403.)

Plaintiff continued to seek treatment for complaints of abdominal pain. He was hospitalized again for abdominal pain and acute pancreatitis from January 9 to January 11, 2020 (AR, Doc. No. 8-9 at PageID 1109), from February 25 to February 28, 2020 (*id.* at PageID 1128, 1140), from March 11 to March 14, 2020 (*id.* at PageID 1149, 1165), and from May 21 to May 25, 2020 (*id.* at PageID 1174, 1191). On July 5, 2020, Plaintiff

was treated overnight in the emergency room for severe abdominal pain complaints, and was discharged with instructions to follow up with his gastrointestinal specialist. (AR, Doc. No. 8-9 at PageID 1223, 1236.) Plaintiff subsequently underwent an antrectomy and proximal duodenectomy on August 6, 2020. (AR, Doc. No. 8-8 at PageID 648-51.) He was hospitalized through at least August 17, 2020. (*See id.* at PageID 649.)

Plaintiff followed up with primary care physician Derek Thomson, D.O., who prescribed pain medication. (AR, Doc. No. 8-10 at PageID 1476.) Records dated through December 2020 indicate that Plaintiff reported decreased abdominal pain and was doing well on medication. (*See, e.g.,* AR, Doc. No. 8-10 at PageID 1472-76.)

However, in January 2021, Plaintiff again experienced severe abdominal pain. (AR, Doc. No. 8-10 at PageID 1471.) He was treated overnight in the emergency room on February 13, 2021 and again on March 6, 2021. (AR, Doc. No. 8-9 at PageID 1241, 1258, 1263, 1271.) He was hospitalized for epigastric abdominal pain and acute-on-chronic pancreatitis on March 19, 2021. (AR, Doc. No. 8-9 at PageID 1273.) Plaintiff was transferred to the Indiana University Hospital on March 21, 2021 after a workup showed sepsis and a suspected infected pancreatic pseudocyst. (*Id.* at PageID 1287.) He apparently underwent biliary drain tube placement at that time. (*See* AR, Doc. No. 8-9 at PageID 1302; AR, Doc. No. 8-11 at PageID 1684.) He returned to Indiana University Hospital in July 2021 for replacement of the biliary drain, which was removed in August 2021. (AR, Doc. No. 8-11 at PageID 1409, 1493, 1522, 1599.)

Plaintiff began pain management treatment with Ahsan Usmani, M.D. on March 4, 2021. (AR, Doc. No. 8-8 at PageID 1031.) When Plaintiff saw Dr. Usmani in follow-up

7

visit on March 31, 2021, he reported improved pain. (*Id.*) Dr. Usmani administered bilateral abdominal trigger point injections on May 15, 2021, but Plaintiff reported only a fifty-percent improvement in his abdominal pain that lasted only three to four days. (*Id.* at PageID 1302.) Subsequent records from Dr. Thomson indicate that he decreased the dosages of Plaintiff's pain medication after Plaintiff reported that he was generally doing well on it. (AR, Doc. No. 8-10 at PageID 1461-65.)

### 3. The ALJ's discussion of Plaintiff's digestive impairments

The ALJ discussed Plaintiff's subjective complaints and the objective medical evidence regarding Plaintiff's digestive impairments when formulating the RFC. (Decision, Doc. No. 8-2 at PageID 41-46.) The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of his symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at PageID 44.) Specifically, the ALJ explained that Plaintiff's symptoms "have improved significantly" since 2019. (*Id.*) He further explained that "although [Plaintiff's] impairments and their symptoms are severe, they are not entirely intractable or untreatable, and [Plaintiff] is able to improve his condition with appropriate treatment." (*Id.*)

When formulating the RFC, the ALJ explained that he accounted for Plaintiff's statements regarding his alleged pain and limitation "to the extent that [they] are consistent with the record." (Decision, Doc. No. 8-2 at PageID 43.) The ALJ restricted Plaintiff to performing a reduced range of light exertional work that limited the amount of

time spent standing and/or walking to four hours per day. (*Id*.) The ALJ also limited Plaintiff to occasional overhead reaching bilaterally due to his pain complaints. (*Id*.)

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments of Error

Plaintiff asserts four errors: 1) the ALJ omitted a limitation for absenteeism in the RFC; 2) the ALJ's evaluation of the medical opinion evidence is "inadequate, unsupported, and unreasonable"; 3) the ALJ failed to "fully and fairly develop the record and forms his own medical opinions"; and 4) the decision is not supported by substantial evidence. (SE, Doc. No. 9 at PageID 1754-55.) Finding that the ALJ's RFC is not supported by substantial evidence, the Court does not address Plaintiff's other alleged errors and instead instructs the ALJ to address all of them on remand.

The Court finds that the ALJ erred in at least two respects when formulating the RFC. First, the ALJ did not explain how (or whether) the RFC accommodates the impact of Plaintiff's absences caused by his digestive impairments. The ALJ's broad assertion that the range of work in the RFC accounts for all of Plaintiff's impairments and pain complaints is unsupported by a logical bridge to an analysis of this evidence. (Decision, Doc. No. 8-2 at PageID 43-44.) Second, the ALJ's reliance on his conclusion that Plaintiff's symptoms "have improved significantly" shows that he erroneously focused on a limited time period and did not account for the entire time period since the alleged disability onset date. For both reasons, the Court finds that the RFC is not supported by substantial evidence. The Court will therefore reverse the Commissioner's decision and remand for further proceedings.

9

### B. The ALJ's RFC Is Not Supported By Substantial Evidence

#### 1. Applicable law

Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

The ALJ is required to consider evidence from the entire relevant time period when formulating the RFC. *E.g., White v. Comm'r of Soc. Sec.*, No. 3:21-cv-762, 2022 U.S. Dist. LEXIS 140674, *47 (N.D. Ohio June 1, 2022) (Knapp, M.J.), *affirmed by* 2022 U.S. Dist. LEXIS 139178 (N.D. Ohio Aug. 4, 2022) (Knepp, D.J.). As Magistrate Judge Knapp explained, "[w]hile the substantial evidence standard is deferential, the Sixth Circuit has emphasized that the chief limitation to that deference 'is the requirement that all determinations be made based upon the record in its entirety.'" 2022 U.S. Dist. LEXIS 140674, *47 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)).

Thus, an ALJ should not "unduly concentrate on one single aspect of the claimant's history." *Rogers*, 486 F.3d at 249.

Notably, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 404.1546(c)). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). In addition, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-

00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

## 2. The ALJ did not build a logical bridge between the evidence of Plaintiff's absences and the RFC

The ALJ erred by failing to explain how the RFC accommodates Plaintiff's multi-day hospitalizations caused by his digestive impairments. The absence of this logical bridge leads the Court to conclude that the RFC is not supported by substantial evidence.

When determining whether a claimant is disabled, an ALJ is required to consider whether he or she is able to "do sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8p, 1996 SSR LEXIS 5, at *5 (S.S.A. July 2, 1996) (emphasis in original). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* Therefore, in addition to considering the impact of a claimant's physical and mental limitations, the ALJ must also consider the impact of impairment-related treatment—including frequency, duration, disruption to routine, and medication side effects—when determining whether a claimant is disabled. SSR 96-8p, 1996 SSR LEXIS 5, at *13-14. *E.g.*, *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *5-6 (4th Cir. Apr. 14, 2023) (ALJ reversibly erred by failing to address evidence regarding the claimant's absenteeism); *Kangas v. Bowen*, 823 F.2d 775, 778 (3d

Cir. 1987) (ALJ should have considered the claimant's six hospitalizations in a sixteen-month period when formulating an RFC finding); *Laracuente v. Colvin,* 212 F. Supp. 3d 451, 466-67 (S.D.N.Y. 2016) (ALJ erred by not considering frequency of medical treatment in determining that plaintiff would not be absent from work more than three days per month); *Bey v. Comm'r of Soc. Sec.*, 21-CV-7832, 2023 U.S. Dist. LEXIS 15526, at *37 (S.D.N.Y. Jan. 30, 2023) ("The ALJ's failure to address relevant evidence bearing upon the question of Plaintiff's attendance amounts to legal error.").

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at *31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ must "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at *31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at *12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at *12 (S.D. Ohio Feb. 8, 2011)).

Here, the ALJ did acknowledge some of Plaintiff's hospitalizations and emergency room visits for his digestive issues. (Decision, Doc. No. 8-2 at PageID 43.) But the ALJ failed to acknowledge the frequency or extent of Plaintiff's treatment,

13

including the significant fact that Plaintiff was treated in an emergency room or hospital for his digestive issues for a total of approximately seventy-five days during the period between September 2019 and March 2021. (*See* AR, Doc. No. 8-7 at PageID 318, 403-05; AR, Doc. No. 8-8 at PageID 648-651, 682; AR, Doc. No. 8-9 at PageID 1044-55, 1109, 1128, 1140, 1149, 1165, 1174, 1191, 1223, 1236, 1241, 1263, 1273, 1287, 1302; AR, Doc. No. 8-11 at PageID 1684.) The ALJ apparently did not consider these absences and certainly did not explain his decision not to account for them in the RFC. The ALJ's failure to build a logical bridge between the evidence in this regard and his conclusions prevents the Court from engaging in meaningful judicial review, and leads the Court to conclude that the RFC is not supported by substantial evidence.

### 3. The ALJ did not base the RFC upon evidence from the entire time period at issue.

The ALJ also erred by failing to account for evidence from the entire relevant time period, and instead relying on an improvement in Plaintiff's condition to formulate an RFC for a reduced range of light work.

As an initial matter, none of the evidence cited in the ALJ's symptom severity analysis supports his conclusion that Plaintiff's digestive symptoms "have improved significantly" with medication. (*See* Decision, Doc. No. 8-2 at PageID 44.) One of the cited records is a report from a CT scan of the abdomen and pelvis that was taken during a February 2020 emergency room visit for abdominal pain. (*Id.* (citing AR, Doc. No. 8-9 at PageID 1132); *see also* AR, Doc. No. 8-9 at PageID 1128-42.) The report references a "[m]ild degree of improvement in the degree of abnormal attenuation within the upper

14

abdomen" compared to January 2020 imaging, but does not mention an improved response to medication. (AR, Doc. No. 8-9 at PageID 1132.) In fact, on the next page of the report, the attending emergency room physician noted that Plaintiff experienced only "brief improvement" in his pain after receiving pain medications. (*Id.* at PageID 1133.) The physician further stated that Plaintiff's pain was not controlled adequately in the emergency department and that he was being admitted "due to uncontrolled pain." (*Id.*)

The ALJ also cites a July 2020 discharge summary for an overnight hospital stay for abdominal pain. (Decision, Doc. No. 8-2 at PageID 44 (citing AR, Doc. No. 8-8 at PageID 652; AR, Doc. No. 8-9 at PageID 1237).) The cited records state: "Patient was given Dilaudid and Zofran, and this seemed to resolve his symptoms." (*Id.*, citing AR, Doc. No. 8-8 at PageID 652.) But the ALJ ignores the fact that Plaintiff's abdominal pain returned shortly after discharge, and that he underwent a hepaticojejunostomy, distal gastrectomy with gastrojejunostomy, and proximal duodenectomy later in July. (*See* AR, Doc. No. 8-8 at PageID 649; AR, Doc. No. 8-10 at PageID 1476.)

Finally, the ALJ relies on a March 2021 record to conclude that "[Plaintiff] reported that Dr. Usmani's trigger point injection caused a '50% improvement in abdominal pain,' although this did not improve his functional level (Exhibit 6F at 2)." (Decision, Doc. No. 8-2 at PageID 44 (citing AR, Doc. No. 8-9 at PageID 1302).) This summary mischaracterizes Plaintiff's statement to his provider. Although Plaintiff did report a fifty-percent improvement in his pain following the bilateral abdominal trigger point injections, he also said that the relief lasted for only three to four days, and reported

15

a current pain level of seven out of ten (with ten being the worst pain). (AR, Doc. No. 8-9 at PageID 1302.) This record, too, does not support the ALJ's conclusion.

Moreover, the ALJ's conclusion that Plaintiff's digestive condition improved with treatment is not based on the entire record. The medical records show only a four- to five-month period of improvement in Plaintiff's abdominal pain between the August 2020 surgery and Plaintiff's complaints of pain in January 2021. Other than that four- to five-month period in late 2020, the records do not document any significant or sustained improvement in Plaintiff's digestive condition until after March 2021. The ALJ did not explain how a light RFC would be reasonable earlier during the relevant time period, when Plaintiff was hospitalized on approximately seven occasions and treated in the emergency department (sometimes overnight) approximately four times—for a total of approximately seventy-five days between September 2019 and March 2021.

Therefore, the ALJ did not build a logical bridge between the overall evidence and his conclusions. Instead, by limiting his RFC analysis to Plaintiff's improved condition at the end of the relevant time period, the ALJ failed to base the RFC "upon the record in its entirety." *Rogers*, 486 F.3d at 249.

This error is not harmless. Plaintiff argues that the evidence supports stricter RFC limitations (for absences) that are work-preclusive. (SE, Doc. No. 9 at PageID 1755-56; Reply, Doc. No. 13 at PageID 1791-92.) The Vocational Expert testified at the October 2021 hearing that a hypothetical individual of Plaintiff's age, education, work experience, and RFC—but with an additional limitation that the individual would be absent three days per month—would be unable to perform competitive work. (AR, Doc. No., Doc.

16

No. 8-2 at PageID 90.) Therefore, the ALJ's failure to explain why he did not include RFC limitations to account for Plaintiff's digestive impairments is not a harmless error.

For these reasons, the RFC assessment is not supported by substantial evidence and remand is warranted.

### C. On Remand, The ALJ Should Also Consider Whether A Closed Period of Disability Was Warranted

On remand, the ALJ should also consider whether a closed period of disability benefits was warranted. A claimant must meet the twelve-month durational requirement before he can be found disabled. 42 U.S.C. § 423(d)(1)(A). The Sixth Circuit has held that while "[t]he Act itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). Thus, a claimant who satisfies the twelve-month durational requirement "may be entitled to benefits from the time his disability commences until such time as the disability ceases." *Lang v. Sec'y of Health & Hum. Servs.*, No. 88-1561, 1989 WL 40188, at *2 (6th Cir. 1989) (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir.1986)).

An ALJ need not use any "magic words" to indicate that he has considered whether a closed period of disability is warranted. *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-CV-1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). But the ALJ must nevertheless consider "every period during which [a claimant] may have been disabled." *Cash v. Comm'r of Soc. Sec.,* No. 3:16-CV-175, 2017 WL 3473813, at *4 (S.D. Ohio

17

Aug. 14, 2017) (Newman, M.J.) (citation omitted), *report and recommendation adopted*, No. 3:16-cv-175, 2017 WL 3769371 (S.D. Ohio Aug. 29, 2017) (Rice, D.J.).

Here, given the ALJ's heavy reliance on evidence showing that Plaintiff's condition improved, it is evident that he failed to consider whether Plaintiff might be entitled to a closed period of disability. He should consider this issue on remand.

## VI. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Hum. Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to absenteeism and the time period prior to March 2021, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should

18

evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

                                              *s/ Caroline H. Gentry*
                                              Caroline H. Gentry
                                              United States Magistrate Judge